1

The Honorable James L. Robart

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

9

KERRY LEACH,

NO.  2:15-cv-00890-JLR

Plaintiff,

**PLAINTIFF'S RESPONSE TO NCO'S (SECOND) MOTION TO DISMISS**

10

v.

11

NCO FINANCIAL SYSTEMS, INC.,

NOTE ON MOTION CALENDAR:

12

Defendant.

November 27, 2015

13

14

## I.      <u>INTRODUCTION</u>

15

Plaintiff Kerry Leach was subjected to unlawful debt collection practices by NCO

16

Financial Systems, Inc. ("NCO" or "Defendant"), a debt collector/collection agency.  After

17

removing this case from King County Superior Court, NCO has now twice moved to dismiss

18

Plaintiff's complaint.

19

The Second Amended Complaint ("SAC") thoroughly spells out violations of both

20

federal and state debt collection law.  NCO created a confusing situation in which multiple

21

companies were attempting to collect the same debt from Ms. Leach at the same time.

22

Compounding the confusion, each company provided different, conflicting information about

23

what was owed, who was owed, and how payments would affect her relationship with her

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 1
2:15-cv-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

alleged creditors.

Without the benefit of any discovery, NCO now seeks early adjudication through a confused motion that addresses neither the Rule 12(b)(6) nor summary judgment standards. Either the Rule 12(b)(6) standard is applied and the SAC is measured against *Iqbal/Twombly*, or the Rule 56 standard is applied and Plaintiff is entitled to discovery and to present evidence. NCO – by attempting to present substantive evidence while attacking the allegations in the Complaint – cannot have its cake and eat it too.

NCO's arguments distract from what matters here: whether Plaintiff met the applicable pleading standard.  Plaintiff's SAC gives the Defendant fair notice of the claims and allows this Court to infer that NCO is liable for unlawful conduct.  Therefore, this Court should deny Defendant's motion to dismiss in its entirety.

## II.     FACTS

According to NCO, Plaintiff entered into a credit card agreement with a creditor named Synovus.  Dkt. #16 ¶ 4.  The credit card was allegedly administered by a company called Systems and Services Technologies, Inc ("SST").  Dkt. #16 ¶ 5.  At some point during SST's handling of the account, NCO began sending collection letters to Plaintiff.  Dkt. #16 ¶ 10.  The ensuing confusion escalated in the summer of 2014, when – in the span of six weeks – SST and NCO sent numerous conflicting and contradictory letters as described below:

| **NCO Communications** | **SST Communications** |
|---|---|
| July 11, 2014, Dkt. #6 at Ex.B<br>• Minimum payment amount: $484.00.<br>• No payment due date.<br>• Directs Plaintiff to pay SST. | July 18, 2014, Dkt. #16 at Ex. A<br>• Minimum Payment Amount: $615.00.<br>• Payment is due on August 15, 2014.<br>• States that the account may be charged off and referred to a collection agency for further action. |

| | |
|---|---|
| • NCO states it is been requested to assist in collecting the minimum payment amount.<br>• NCO warns that the communication is from a debt collector.<br><br>August 21, 2014, Dkt. #16 at Ex. A<br>• NCO offers to "settle" the account for $2,313.18.<br>• NCO states that the settlement amount must be paid within 20 days (September 10).<br>• NCO states that the payment will cause SST to notify credit bureaus that the account was settled.<br>• NCO states that SST may be required to provide information to the IRS, and that Plaintiff may receive a 1099c.<br>• NCO states that if the offer is not accepted, the account balance may periodically increase due to additional interest and other charges. | July 18, 2014, Dkt. #16 at Ex. A<br>• SST offers to help restore the Visa to a "current" status.<br>• SST offers the "Second Chance" program, where payments can be lowered.<br><br>August 18, 2014 Dkt. #16 at Ex. A<br>• Minimum Payment Due: $750.00<br>• SST states that the account may be referred to a collection agency for further action.<br>• States that payment is due on September 15, 2014. |

Two different entities provided conflicting information over six weeks via five different letters. Although no new charges were made, the "minimum payment amount" fluctuated greatly. SST warned that it would close the account (through a "charge off") and in that event, a debt collector could become involved. However, NCO (who identified itself to Ms. Leach as a debt collector) was already sending letters demanding money on the account. A consumer would be confused whether the account even remained open, let alone to whom she should make payment and what effect that payment would have. In total, two different companies, at the same time, confusingly attempted to collect a debt by falsely representing different amounts due, different account statuses, different results if payments were made, and different balances, on the same debt. The right hand did not know what the left hand was doing.

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 3
2:15-cv-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1    The letters from NCO were confusing, intimidating, and failed to inform Kerry Leach of

2    relevant and material information regarding the debt.  Dkt. #16 ¶ 11.

### III.    REQUEST TO STRIKE INADMISSIBLE DECLARATION

4    The declaration of Andrew Balthaser is an exercise in circular reasoning, purporting to

5    invoke the business records exception to the hearsay rule without providing the business records,

6    making his testimony effectively unrebuttable.  This clever tactic, however, runs afoul of both the

7    best evidence rule and the rule against hearsay, and therefore should be stricken.

### A.  NCO's Declaration Violates the Best Evidence Rule

9    The best evidence rule provides that the original of a "writing, recording, or photograph"

10   is required to prove the contents thereof.  Fed. R. Evid. 1002; *United States v. Bennett*, 363 F.3d

11   947 (9th Cir. 2004).  Where the rule applies, the proponent must produce the original (or a

12   duplicate, *see* Fed. R. Evid. 1003) or explain its absence.  Fed. R. Evid. 1002, 1004.  The rule's

13   application turns on "whether contents are sought to be proved."  Fed. R. Evid. 1002 Advisory

14   Committee's note.  "The rule applies when a witness seeks to testify about the contents of a

15   writing, recording or photograph without producing the physical item itself – particularly when

16   the witness was not privy to the events those contents describe."  *Bennett*, 363 F.3d 953

17   (citing Fed. R. Evid. 1002 Advisory Committee note).  A writing or recording includes a

18   "mechanical or electronic recording" or "other form of data compilation."  Fed. R. Evid.

19   1001(1).

20   Here, Mr. Balthaser discusses the content of his company's records without producing

21   those records.  Dkt. #17-1.  Conveniently, these unidentified "records" are not provided for

22   examination, and support all of NCO's assertions and none of Plaintiff's.  It is unclear whether

23

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 4
2:15-CV-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1    the records do, in fact, state these points verbatim, or if the declaration contains editorial flair.

2    This cherry-picking of phantom records only highlights the need for discovery.

3          The best evidence rule requires that the records themselves be produced, not Mr.

4    Balthaser's interpretations of those records.  Mr. Balthaser admits that he was not privy to the

5    facts in his declaration, as he states that his knowledge is simply based on a review of NCO's

6    records. Dkt. #17-1 ¶¶ 4-5.  *Bennett*, 363 F.3d 953.  Mr. Balthaser's testimony violates the best

7    evidence rule, and should be stricken.[1]

8          **B.  NCO's Evidence is Hearsay**

9          Only admissible evidence may be considered by the trial court in ruling on a motion for

10   summary judgment, and "[t]he same rule applies when evidence is submitted . . . in support of a

11   motion to dismiss."  *Beyne v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988).

12   This Court has previously ruled that NCO failed to meet the evidentiary requirements to meet the

13   business records exception.  Dkt. #15 at p. 7-9.

14         NCO again submits the declaration of Andrew Balthaser, who describes himself as a Vice

15   President of Compliance at NCO.  Dkt. #17-1.  The bulk of the affidavit attempts to lay the

16   foundation for the admission of supposed business records under a hearsay exception.  Dkt. #17-

17   1.  For this exception to apply and for business records to be admissible over a hearsay objection,

18   five elements must be met:

19         **A)** the record was made at or near the time by — or from information transmitted
           by — someone with knowledge;
20         **(B)** the record was kept in the course of a regularly conducted activity of a
           business, organization, occupation, or calling, whether or not for profit;
21         **(C)** making the record was a regular practice of that activity;

22   _____

23   [1] Plaintiff is aware that the letters Mr. Balthaser testifies to are already in the Court's record.  However, Mr.
     Balthaser's testimony and NCO's motion focus on Mr. Balthaser's testimony regarding the limited amount
     of information that NCO received from SST.  None of the records that he reviewed in making his declaration
     have not been produced.

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

**(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or with a statute permitting certification; and

**(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

Fed. R. Evid. 803(6).  The theory behind the business records exception is that such records – once properly authenticated – bear a special indicia of reliability.  *NLRB v. First Termite Control Co.,* 646 F.2d 424, 427 (9th Cir. 1981).  Although Plaintiff disagrees that the declaration satisfies the foregoing foundational requirements, it does not matter because **no business records are attached**.  As a self-evident rule, the business records exception exists to authenticate and admit business records, not testimony about non-produced records.

## IV.   STANDARD OF REVIEW FOR A MOTION TO DISMISS

### A.   Fed. R. Civ. P. 12(b)(6) Motions to Dismiss

Historically, Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim are "viewed with disfavor" and are "rarely granted."  *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  This issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974).  On this backdrop, the *Iqbal/Twombly* decisions provide additional clarification but do not impose any heightened pleading standards.  *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 6
2:15-CV-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

veracity"). After accepting as true plaintiff's allegations and drawing all reasonable inferences in its favor, a court must then determine whether the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008) (court must also draw all reasonable inferences in favor of the plaintiff).

## B. Plausible Complaints Survive Rule 12(b)(6) Motions to Dismiss

The Ninth Circuit has explained the "plausibility" requirement as follows:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6) … The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'

*Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (citing *Iqbal*, 129 S. Ct. at 1951). Stated more succinctly, "*Iqbal* demands more of plaintiffs than bare notice pleading, *but it does not require us to flyspeck complaints looking for any gap in the facts*." *Lacey v. Maricopa County (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (en banc) (citations omitted) (emphasis added).

## C. Notice Pleading Standards Apply

The Ninth Circuit has held that *Iqbal*, *Twombly*, and their progeny did little to alter federal pleading standards beyond notice pleading, as insufficient complaints would be dismissed under either the current or former standards. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 963 (2009), *rev'd on other grounds by Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011) ("Even before the Supreme Court's decision[s] in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*, it was likely that conclusory allegations of motive, without more, would not have been enough to survive a motion to dismiss").

It remains the case that a complaint requires a "short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 7
2:15-CV-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 127 S. Ct. at

1964). A plaintiff's allegations need "only enough facts to state a claim for relief that is plausible

on its face." *Twombly*, 556 U.S. at 570. "[W]e do not require heightened fact pleading of

specifics..." *Id*.[2]

The question, thus, is whether NCO has been given fair notice of Plaintiff's claim and the

grounds upon which it rests. Here, Plaintiff meets and exceeds the applicable pleading standards

and the motion to dismiss should be denied.

## V.      STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT

"Summary judgment is to be granted cautiously, with due respect for a party's right to

have its factually grounded claims and defenses tried to a jury." *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986). When seeking summary judgment, the moving party must initially

identify those portions of the record before the court which it believes establish an absence of

material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th

Cir. 1987). In other words, it is the burden of the party who moves for summary judgment to

establish that there is "no genuine issue of material fact, and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d

946, 951 (9th Cir. 1978).

### A.   NCO's Motion Makes No Argument in Support of Summary Judgment

Beyond titling its motion with the words "summary judgment," NCO recites only one

---

[2] The post-*Twombly* decision in *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) is instructive. Within weeks after deciding *Twombly*, the Court reversed a Tenth Circuit decision for requiring fact pleading. In Erickson, the Court held that a prisoner's § 1983 complaint, alleging simply that his hepatitis C treatment was terminated and thus his life was endangered without further treatment, gave prison officials fair notice of his claim. The Court held that it was error for the court of appeals to declare these allegations too conclusory to establish – for pleading purposes – that the prisoner had suffered "a cognizable independent harm" as a result of his removal from the hepatitis C treatment program. *Id*.

paragraph discussing summary judgment standards, and makes no argument in support of summary judgment.  Dkt. #17 at p. 6-7.  When a defendant's motion for summary judgment does not address plaintiff's claims, a plaintiff is not on notice as to those claims.  *Greene v. Solano County Jail*, 513 F.3d 982, 990. (9th Cir. 2008) (citing *Evans v. United Airlines, Inc.*, 986 F.2d 942, 945 (5th Cir. 1993)).

Recently, in the District of Nevada, Magistrate Judge Nancy Koppe was presented with a large number of motions, giving occasion for the following explanation of the legal system:

> "The adversarial process requires thoughtful, developed argument by both parties explaining what the parties' competing positions are, the factual basis for those positions, and the legal authority supporting the relief sought. The Court's procedural system is designed to enable a full and fair evaluation of the merits of arguments. The parties generally develop and present their adverse positions through written motions and briefs. (citation omitted). The Local Rules for this District foster that adversarial process by providing a schedule for briefing motions that provides parties with a vehicle to present their competing positions in a meaningful fashion… These procedures are in place so that both parties have the opportunity to present their positions to the Court, which in turn gives the Court the ability to weigh their competing arguments to render a decision."

*Maxson v. Mosaic Sales Solutions US Operating Co., LLC*, No. 2:14-CV-02116-APG, 2015 WL 4661981, at *1 (D. Nev. July 29, 2015).  NCO has not directly addressed any of Plaintiff's claims.  The SAC contains seventeen counts, to which NCO only offers sweeping generalizations and erroneous statements of fact.  Plaintiff is left fighting an unseen enemy, knowing only that NCO seeks "summary judgment" without any particular bases.

## B.  Request for Denial or Continuance Pursuant to FRCP 56(d)

Upon a declaration that discovery is needed, the court may defer ruling or deny a motion for summary judgment.  Fed. R. Civ. P. 56(d).  Although Rule 56[(d)] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery "where the nonmoving party has not had the opportunity to

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 9
2:15-cv-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1   discover information that is essential to its opposition." *Metabolife Int'l v. Wornick*, 264 F.3d

2   832 (9th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986).

3        When a summary judgment motion is filed "so early in the litigation, before a party has

4   had any realistic opportunity to pursue discovery relating to its theory of the case, district courts

5   should grant any Rule 56[(d)] motion fairly freely….[where] no discovery whatsoever has taken

6   place, the party making a Rule 56[(d)] motion cannot be expected to frame its motion with great

7   specificity as to the kind of discovery likely to turn up useful information, as the ground for such

8   specificity has not yet been laid." *Burlington Northern & Santa Fe R.R. Co. v. The Assiniboine*

9   *and Sioux Tribes of the Fort Peck Indian Reservation, Montana,* 323 F.3d 767, 773-74 (9th Cir.

10   2003) (citations omitted).

11        NCO's motion takes inconsistent positions.  First, NCO states that "Plaintiff's entire case

12   does not raise any questions of fact, but rather turns on a single question of law—the

13   interpretation of statutes (i.e. sections 1682e [sic], 1692f of the FDCPA and the CPA)."  Dkt. #17

14   at p. 7.  However, NCO also argues that Plaintiff's claims should be dismissed because NCO's

15   representative **made factual assertions**[3] that NCO did not have the requisite knowledge to

16   support liability.  NCO injects facts into what it argued were simply issues of statutory

17   interpretation.

18        NCO's argument raises issues that demonstrate the need for discovery.  To defeat claims

19   under RCW 19.16.250(8), NCO conveniently asserts that it lacked the knowledge required in

20   order to impose liability.  Dkt. #17 at p. 12-13.  NCO's witness states that "[o]nly limited

21   account information was transmitted to NCO by SST when NCO was asked to assist with

22

23

---

[3] Plaintiff disagrees, as NCO is the parent company of SST, which raises issues of fact concerning whether NCO was truly unaware of the information contained in SST's files.

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 10
2:15-CV-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1   collection on Plaintiff's Visa Account…This account information included: the name of the

2   creditor, the account number, the name of the servicer, the type of account, the total balance

3   owing, and the minimum payment due." *Balthaser Decl.* ¶ 6. However, Mr. Balthaser appears

4   to have plenty of information relayed from SST, which only raises factual questions of what

5   NCO's files actually contained. *See Balthaser Decl.* at ¶¶ 9-10 ("On July 11, 2014, after

6   Plaintiff had continued to miss required payments on the account and had not responded to either

7   NCO or SST…. On August 21, 2014, after Plaintiff had continued to miss required payments on

8   the account and had not responded to either NCO or SST…"). In short, NCO was in possession

9   of more information than Mr. Balthaser listed in his declaration, and the only mechanism by

10   which to uncover the facts is the discovery process.

11       Wholly absent from Mr. Balthaser's declaration are the documents or records that he

12   relied upon in making his declaration. Dkt #17-1. NCO moves for summary judgment based on

13   essentially unrebuttable records, as they are not provided to Plaintiff nor this Court. Plaintiff

14   believes discovery will explain the conflict in Mr. Balthaser's declaration, and also reveal the

15   documents on which he relies in making his declaration. Plaintiff is entitled to learn the context

16   in which the records were created (as well as the identities of the records) to accurately respond

17   to NCO's summary judgment motion. *Santiago Decl.* ¶¶ 3-4.

18       Mr. Balthaser's declaration generates other questions to be addressed in discovery.

19   While Mr. Balthaser claims that SST only sent limited information to NCO, SST's website

20   boasts that **NCO actually owns SST**, stating: "Who we are – Key facts…400 plus strong

21   workforce in two locations: St. Joseph, Missouri and Montreal, Quebec with additional

22   worldwide capacity **through our parent, NCO Financial Systems**." *Santiago Decl.* at ¶ 6 and

23   Ex. A (emphasis added). Whether a parent company would have full access to the records of a

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 11
2:15-CV-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

subsidiary is a legitimate question, especially in light of the close relationship between SST and

NCO, and further discovery is necessary to answer this question.  *Santiago Decl.* ¶ 6.

Because NCO has moved for summary judgment before even filing a responsive

pleading, it is difficult to narrow down the issues that would be addressed in discovery.  At this

stage, Plaintiff cannot be expected to frame her request for continuance or denial with great

specificity.  *Burlington Northern & Santa Fe R.R. Co.* 323 F.3d 773-74.  However, even at this

stage in the case, Plaintiff can identify numerous issues that require additional discovery:

1) The relationships between Synovus, SST, and NCO.
2) How SST arrived at one number for minimum payment, while NCO arrived at a markedly different number a few days later.  In other words, how each entity calculated the amount due.
3) Whether NCO relied on SST's information or calculated its own numbers.
4) Any and all records regarding Ms. Leach's alleged account, including, but not limited to:
   a. Billing statements.
   b. All communications to Ms. Leach from NCO, SST, and Synovus.
   c. Accounting supporting the balances owed.
   d. Communications between NCO, SST, and Synovus.
   e. The contract governing the alleged account.

*Santiago Decl.* ¶ 5.

For the above reasons, Plaintiff respectfully requests that this Court deny or continue

NCO's motion for summary judgment in favor of discovery pursuant to Fed. R. Civ. P. 56(d).

## VI.      LAW AND ARGUMENT

### A.  Defendant's Statute of Limitations Argument is Moot

The SAC makes no allegations of FDCPA violations related to the January 24. 2014

letter.  Dkt. #16.  To the extent that Plaintiff's SAC is confusing, Plaintiff only refers to the

January 24, 2014 letter as a point of comparison to later letters, and in support of her state law

claims which have a four-year statute of limitations.

### B.  Receipt of a Collection Letter is Not Required

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 12
2:15-cv-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1    The Fair Debt Collection Practices Act was enacted to protect consumers from improper

2  or abusive debt collection efforts.  15 U.S.C. § 1692 et seq.  The FDCPA is a strict liability

3  statute which "makes debt collectors liable for violations that are not knowing or intentional."

4  *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008); *see also McCollough v.*

5  *Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).  A consumer who did

6  not actually receive a letter directed toward her at the time it was sent may bring an action

7  challenging the lawfulness of that letter under the FDCPA.  *Tourgeman v. Collins Fin. Servs.*,

8  755 F.3d 1109 (9th Cir. 2014).  Defendant argues that only the August 21, 2014 letter is

9  actionable because that is the only letter that Plaintiff received.  Dkt #17 at p. 7.  However,

10  receipt of a letter is not required to bring an FDCPA claim.[4]

### C. Plaintiff States Plausible Claims Under 15 U.S.C. § 1692e and 1692f as the Defendant's Communications Were Misleading and Deceptive.

12    NCO spends the majority of its motion arguing that sections 1692e and f were not

13  violated, although the motion fails to track the Complaint or its causes of action.  Dkt. #17.  In

14  any event, the allegations in Counts 1 through 10 include sufficient factual content to allow this

15  court to draw the reasonable inference that NCO's communications were misleading and

16  deceptive.  Dkt #16; *Iqbal*, 129 S. Ct. at 1949.  A debt collector may not use any false, deceptive,

17  or misleading representation or means in connection with the collection of any debt."  15 U.S.C.

18  § 1692e.  Likewise, a debt collector may not use unfair or unconscionable means to collect or

19  attempt to collect any debt.  15 U.S.C. § 1692f.   Assessing violations under these FDCPA

---

[4] Furthermore, it is not as clear, as NCO suggests, whether Ms. Leach received the letter.  As this case has not yet progressed beyond the pleading stage, it is not clear that Ms. Leach "only" received any particular letter.  Given that this case is about the confusion spawned by NCO's actions, Ms. Leach may have been confused about NCO's role *and whether SST had in fact sent the other letters at issue* (given that NCO's letters offer varying levels of direction to pay or contact SST).  This is a good example of why discovery is appropriate before adjudicating a case on the merits at the pleading stage.

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 13
2:15-CV-00890-JLR

**ANDERSON LAW OF KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

provisions requires an objective analysis that considers whether "the least sophisticated debtor would likely be misled by the communication." *Donahue v. Quick Collect, Inc.,* 592 F.3d 1027, 1030 (9th Cir. 2010).

In *Tourgeman v. Collins Financial Services, Inc*, 755 F.3d 1109, 1119 (9th Cir. 2014), a consumer received debt collection letters from Paragon Way, a debt collector, who falsely identified the original creditor as "American Investment Bank, NA" instead of "CIT Online Bank, NA" in dunning letters that also included an "Original Account #" that did not match the consumer's original CIT loan number. The Ninth Circuit found that "unlike mislabeling portions of a total debt as principal rather than interest—literally false, but meaningful only to the 'hypertechnical' reader," factual errors that "could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort," are material violations. *Tougeman*, 755 F. 3d at 1121.

Defendant NCO misapprehends Plaintiff's SAC, as it spends much of its briefing explaining why its letters, viewed in a vacuum, do not violate the FDCPA.[5] However, Ms. Leach does not live in a vacuum; context is extremely relevant in determining whether something is misleading. The major problem for NCO is the juxtaposition, and timing, of the letters from NCO in conjunction with the letters from SST. In short, the alleged creditor[6] is making one set of representations while NCO, purporting to act on behalf of that same creditor simultaneously is making an entirely different set of representations.

NCO's letters are likely to mislead the least sophisticated consumer, which is a violation of §§ 1692e and 1692f. Plaintiff's SAC alleges:

---

[5] Ironically, NCO's position is that its letters are simple to understand and thus do not violate the FDCPA. Yet it takes five pages, or one-third of NCO's brief, to explain what the letters mean.

[6] Technically, SST is the alleged creditor's agent, and Synovus is the alleged creditor.

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1)  NCO misrepresented its role with respect to the account.
2)  NCO misrepresented and sowed confusion about the legal effects of payments (or a settlement) if made to the account, such as whether the account would remain open or return to good standing.
3)  NCO stated incorrect amounts allegedly due and owing.
4)  NCO falsely stated the tax consequences of accepting the "settlement."
5)  NCO misstated the relationship between NCO and SST by stating that NCO was requested to assist in collection, and implying that NCO was unsure of SST's obligations regarding IRS reporting.

Dkt. #16 ¶ 31.

If two separate companies, at the same time, attempt to collect a debt via dunning letters that include different amounts due, different account statuses, different results if payments were made, different balances, for what appears to be the same debt, a consumer is likely to suffer a disadvantage in responding to that collection effort. *Tourgeman, Inc.*, 755 F.3d at 1123. These juxtaposed statements make it difficult for Plaintiff to understand exactly what her alleged obligations were or how to resolve them. *Id.* As just one example, the least sophisticated consumer could easily view NCO's August 21, 2014 letter (which demands payment within 20 days or otherwise the charges may increase) as wholly contradictory to the August 18, 2014 letter from SST which states that a minimum payment of $750.00 was due, as presumably the payment of $750.00 to SST would suspend collection and keep the account open, while the payment to NCO would have a different outcome and close the account permanently.[7]

When construed in favor of the Plaintiff, and accepted as true, these allegations give the Defendant the ability to understand the nature of the allegations, and give this Court the ability to

---

[7] NCO continues to argue that "settlement letters do not violate the FDCPA." Dkt. #17 ¶¶ 10-12. Plaintiff has never made this allegation. The issue with a revolving credit account is that ordinarily a consumer has the ability to delay paying immediately in exchange for agreeing to pay interest or penalties. Where a debt collector offers to "settle" an account (whose status has already been called into question by the creditor), and that failure to settle that account within 20 days will result in additional fees or penalties, and that is just one of several letters sent by the debt collector, a consumer could easily be misled. It is not that NCO offered to "settle" that is the violation; it is that NCO's letters were deceptive and misleading for the reasons stated herein.

1   draw the reasonable inference that Defendant is liable for unlawful conduct.  *Iqbal*, 556 U.S. 662

2   (2009).

3         To the extent that NCO argued that summary judgment is appropriate on this issue, Ms.

4   Leach testifies that the conflicting letters from NCO and SST were confusing and that she could

5   not figure out what her rights and responsibilities were concerning the account.  *Leach Decl.* ¶¶

6   3-4.

7     **D.**  **Plaintiff's WCAA/CPA Allegations State Claims on Which Relief May Be Granted**

8         Plaintiff's WCAA claims, as enforced through the CPA, easily meet the heightened

9   *Iqbal/Twombly* pleading standard.  For each of these violations, Plaintiff outlined the statutory

10   basis, stated which piece of information was missing from the letters, and even attached the

11   letters that fails to contain the required information.  It is unclear how much more thorough

12   Plaintiff's allegations could be.

13         Counts 11 through 16 of Plaintiff's FAC allege that NCO's letter failed to provide

14   itemization of the debt as required by state law.  *See* RCW 19.16.250(8)(c).  The required

15   itemization Defendant failed to include was (1) the date of last payment and (2) interest, service

16   charges, and or late payment charges added by the original creditor before it was received for

17   collection.  Such actions by NCO made it difficult for Plaintiff to assess what she allegedly

18   owed, or why she allegedly owed it.  NCO's letters are vague as to the origin of the debt, do not

19   mention on whose behalf the letters are sent (Synovus or SST), and threaten Plaintiff with

20   increased balance twice in the same letter if she does not pay.  Dkt. #16.  The fact that another

21   company was attempting to collect on the same debt made this information even more necessary.

22   No less than three parties are somehow involved with Plaintiff's alleged credit card.

23

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

The allegations in Counts 11 through 16 should be accepted as true and construed in the light most favorable to Plaintiff. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). NCO's letters, attached to the SAC, obviously do not contain the disclosures. Dkt. #16 at Ex. B.

> A collection agency must itemize a demand for payment which includes: "[i]nterest or service charge, collection costs, or late payment charges, if any, added to the original obligation by the original creditor, customer or assignor before it was received by the licensee for collection…"

RCW 19.16.250(8)(c)(ii).[8] Plaintiff's SAC alleged that NCO failed to provide the interest, service charges, collection costs, or late payment charges as required by the WCAA. Dkt. #16. Whether each letter was the first communication or not is immaterial, as the itemization must be given when a different amount is indicated in such letters. All of the letters at issue here contain different amounts, yet none of them contain the itemization required. Dkt #16 at Ex. B.

## 1.   Defendant Submits Inadmissible Extrinsic Evidence to Oppose Plaintiff's Well-Pleaded Complaint

NCO relies on extrinsic evidence to undercut Plaintiff's CPA claims. Specifically, NCO hangs its hat on the language of RCW 19.16.250(8)(c)(ii) "if such information is known," and RCW 19.16.250(e)(ii) "if known." While a collection agency is only required to provide the information outlined in each statute if the collection agency knows such information. NCO argues that Plaintiff's claims should be dismissed because its representative has stated that it did not know the required information when it sent the letters.

First, NCO's argument is not credible. SST is owned by NCO, and therefore it is reasonable to infer that NCO has access to SST's information. *Santiago Decl.* at ¶ 6 and Ex. A. Without actually seeing the contents of NCO's file, for notice-pleading purposes, Plaintiff has

---

[8] This applies regardless of whether the communication is the "initial communication." *See* RCW 19.16.250(8)(c) (requirements apply to the first notice and any subsequent notice where the amount demanded differs from the first notice).

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

fairly alleged that NCO had knowledge of this basic, fundamental information related to the alleged account.

In any event, Defendant's argument is improper because it relies entirely on inadmissible extrinsic evidence.  Defendant's factual challenges should have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6) and should not be given any weight.  *See Lee v. City of Los Angeles*, 250 F3d 668, 688, (9th Cir. 2001); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) ("It is generally true that a trial court may not consider evidence outside the pleadings in connection with a motion to dismiss.").  The court may only consider documents outside the pleadings when the complaint specifically references the "contents" of a document, and whose authenticity no one questions.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

Here, Plaintiff specifically alleged that NCO knew the amount of interest, service charges, or late payment charges added to the original obligation by the original creditor before it was received by NCO for collection (RCW 19.16.250(8)(c)(ii)), and knew date of last payment and (RCW 19.16.25(8)(e)(ii)).  Dkt. #16 ¶¶ 39, 43.  Plaintiff did not refer to any document outside the pleadings in her SAC.  NCO's reliance on the Affidavit of Andrew Balthaser is misplaced and improper in a motion to dismiss.  *Lee*, 250 F3d 688.  Furthermore, Mr. Balthaser's declaration is inadmissible under the rules of evidence.  Because Plaintiff alleged that NCO knew the information at issue, and because NCO's evidence may not be considered, the motion to dismiss should be denied.

## 2.   Contrary to Defendant's Assertion, Plaintiff Did Not Allege That the WCAA is Privately Enforceable

NCO again argues that the WCAA is not privately enforceable.  Dkt. #17 at p. 14.  As Plaintiff has already stated, Plaintiff does not allege that the WCAA is privately enforceable.

1   Indeed, this Court already considered the issue and noted that Plaintiff does not make this

2   argument.  Dkt. #15 at 11.  This is a moot issue and it is unclear why it is again raised by NCO.

3   ### 3.   Plaintiff Alleged Injury Under the WCAA/CPA

4   Defendant claims that Plaintiff has not alleged injury, and as such, she cannot prevail on

5   any claim brought under the CPA.  Dkt #17.  This is incorrect, as Ms. Leach alleged financial

6   injury related to the expenses of seeking and retaining counsel to determine her rights and

7   obligations.  Dkt. #16 ¶¶ 14-15.

8   In *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 54 (2009), the Washington

9   Supreme Court held that a recipient of an unlawful collection notice could establish "injury"

10  under the CPA/WCAA without having made any payment to the collection agency.  In *Panag*,

11  the Washington Supreme Court recited decades of Washington case law establishing that

12  nominal or "unquantifiable" damages were sufficient – and monetary loss need not be proven –

13  to allege "injury" under the CPA.  *Id.* (citing cases); *see also Mason v. Mortgage Am., Inc.*, 114

14  Wn. 2d 842, 854 (1990) ("The injury element will be met if the consumer's property interest or

15  money is diminished because of the unlawful conduct even if the expenses caused by the

16  statutory violation are minimal.").

17  Consulting an attorney to determine one's legal rights (or incurring such costs as parking

18  and postage) is sufficient to establish an "injury" to business or property.  *Panag*, 166 Wn.2d at

19  62 ("Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt [a CPA

20  "injury"] is distinct from consulting an attorney to institute a CPA claim [not a CPA "injury"].").

21  Even if a person does not pay a wrongfully-demanded debt, "the recipient of a deceptive demand

22  payment may be injured in other ways."  *Id.* at 64.  That injury could include expenses incurred

23  with investigating the demand for payment, or the costs associated with traveling resulting from

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 19
2:15-cv-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1    the action.  *Id.* (citing *Tallmadge v. Aurora Chrysler Plymouth, Inc.*, 25 Wn.App. 90 (1979)

2    (injury amounted from costs associated with traveling to dealership in reliance on false

3    advertisements)); *see also Walker v. Quality Loan Serv. Corp.*, 176 Wn.App. 294, 320 (2013)

4    ("Investigative expenses, taking time off from work, travel expenses, and attorney fees are

5    sufficient to establish injury under the CPA").

6         Plaintiff specifically alleged that because of NCO's letters, "Plaintiff suffers financial

7    uncertainty and unease, emotional distress, incurred expenses in seeking and retaining counsel in

8    connection with ascertaining her legal rights and responsibilities, and on information and belief,

9    has suffered damaged credit." Dkt. #16 at ¶ 1.  Again, the CPA requirement of establishing

10   "injury" is not a pleading standard, but an evidentiary standard, and even an unquantifiable and

11   small injury will suffice.  NCO's factually-incorrect statement that Plaintiff has no injury

12   overlooks paragraphs 14-15 of the SAC, and Defendant's motion to dismiss should be denied.

13        To the extent that NCO has argued summary judgment is appropriate on this issue, Ms.

14   Leach has specifically testified that she has suffered injury as a result of NCO's actions, and

15   NCO's motion for summary judgment should be denied.  *Leach Decl.* ¶ 5-6.

16                           **VII.    <u>CONCLUSION</u>**

17        NCO's letters to Ms. Leach made it difficult, if not impossible, to tell who was owed

18   money, how much was owed, when it was owed, or why it was owed.  Furthermore, NCO had

19   information that it was required to provide in its communications, yet it failed to do so.  Therefore,

20   Plaintiff respectfully requests that this Court deny the Defendant's motion to dismiss.

21

22

23   //

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 20
2:15-cv-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

Dated this 23rd day of November, 2015

                                  **ANDERSON LAW OF KING COUNTY, PLLC**

By: /s/ T. Tyler Santiago
T. Tyler Santiago, WSBA No. 46004
Jason D. Anderson, WSBA No. 38014
787 Maynard Ave. S.
Seattle, WA 98104
(206) 395-2665
(206) 395-2719 (fax)
E-mail: Tyler@alkc.net
               Jason@alkc.net
Attorneys for Plaintiff Kerry Leach

**HENRY, DEGRAAFF & MCCORMICK, PS**

By: /s/ Christina Henry
Christina L Henry, WSBA No. 31273
Attorney for Kerry Leach
1833 N 105th St, Ste 203
Seattle, WA 98133
(206) 330-0595
(206) 400-7609 (fax)
chenry@hdm-legal.com

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT - 21
2:15-cv-00890-JLR

ANDERSON LAW OF
KING COUNTY, PLLC
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

Certificate of Service

I hereby certify that on November 23, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Damian P. Richard
drichard@sessions-law.biz
Sessions, Fishman, Nathan & Israel LLP
1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426
(619) 758-1891
FAX: (619) 296-2013
*Attorney for Defendant*

Christina L Henry, WSBA No. 31273
Attorney for Kerry Leach
1833 N 105th St, Ste 203
Seattle, WA 98133
(206) 330-0595
(206) 400-7609 (fax)
chenry@hdm-legal.com
*Co-counsel for Plaintiff Kerry Leach*

/s/ T. Tyler Santiago
T. Tyler Santiago

CERTIFICATE OF SERVICE - 1
2:15-CV-00890-JLR

**ANDERSON LAW OF
KING COUNTY, PLLC**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719